## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**CLELIA RICCARDI,**                    **CASE NO.:**

     **Plaintiff,**

**v.**

**FAY SERVICING, LLC and**
**SN SERVICING CORPORATION,**

     **Defendant.**
_____/

### COMPLAINT FOR DAMAGES WITH JURY DEMAND

1.     Plaintiff, CLELIA RICCARDI ("Plaintiff" or "Mrs. Riccardi"), by and through undersigned counsel bring this complaint for damages with a demand for a jury trial against Defendant, FAY SERVICING, LLC for violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681 *et seq.,* the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Florida Consumer Collection Practices act, Florida Statute §559.72 et. seq. (hereinafter "FCCPA").

2.     Plaintiff further alleges Defendant SN SERVICING CORPORATION has committed violations of the FDCPA and FCCPA.

### JURISDICTION AND VENUE

3.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.     Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

5.     This Court has supplemental jurisdiction to hear all state law claims that are pleaded herein or that may subsequently arise pursuant to 28 U.S.C. § 1367

## PARTIES

6.      Plaintiff is a natural person who, always relevant to this action is and was a resident of Broward County, Florida and is a "consumer" as defined by 15 U.S.C. §1692a(3).

7.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

8.      Plaintiff is a "consumer" as defined by Florida Statute §559.55(8).

9.      Mrs. Riccardi is the owner of real property and improvements located at and commonly known as 1270 NW 48th Place, Deerfield Beach, FL 33064 (the "Home").

10.     Mrs. Riccardi currently maintains the Home as her primary residence and has always done so relevant to the allegations in this Complaint.

11.     Defendant, Fay Servicing, LLC is an Illinois Corporation, authorized to do business in the state of Florida with a registered agent listed as REGISTERED AGENT SOLUTIONS, INC. at 155 OFFICE PLAZA DR. SUITE A, TALLAHASSEE, FL 32301.

12.     Defendant, Fay Servicing, LLC ("Fay Servicing") uses instrumentalities of interstate commerce in a business the principal purpose of which is the collection of debts.

13.     These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications used to contact consumers within the state of Florida, or third parties who receive information regarding these consumers' accounts.

14.     Fay Servicing is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) and Florida Statute §559.55(7).

15.     Fay Servicing is the previous servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to as the "Loan").

16.     At all times material hereto, Fay Servicing regularly collects or attempts to collect debts for other parties and is a "debt collector" as defined under 15 U.S.C. 1692a(6).

17.     Defendant, SN Servicing Corporation ("SNSC") is a California corporation, authorized to do business in the state of Florida with a registered agent listed as The Prentice-Hall Corporation System, Inc. at 1201 Hays Street, Tallahassee, FL 32301.

18.      SNSC uses instrumentalities of interstate commerce in a business the principal purpose of which is the collection of debts.

19.     SNSC is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) and Florida Statute §559.55(7).

20.     These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications used to contact consumers within the state of Florida, or third parties who receive information regarding these consumers' accounts.

21.     SNSC is current servicer of the Loan.

22.     The Loan is currently owned by US Bank Trust National Association as Trustee of the Igloo Series V Trust.

23.     At all times material hereto, SNSC regularly collects or attempts to collect debts for other parties and is a "debt collector" as defined under 15 U.S.C. 1692a(6).

## STATUTORY FRAMEWORK

### The FCRA

24.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.,* was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

25.     Congress found that "[i]nnacurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. §1681(a)(1).

26.     "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

27.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. 15 U.S.C. §1681s-2.

28.     "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. *See also Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295, 1302 (11th Cir. 2016).

29.     The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1691n.

30.     If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

31.     Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

> > i.     credit or insurance to be used primarily for personal, family, or household purposes;
>
> > ii.    employment purposes; or
>
> > iii.   any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

32.     The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

### National CRAs and Furnishers Communicate Consumer Disputes and Responses via the E-Oscar Reporting Platform

33.     The FCRA requires Credit Reporting Agencies ("CRAs") to implement an automated reinvestigation system through which furnishers of information to the CRA may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

34.     To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian (the three major "National CRAs"), along with Innovis Data Solutions, Inc., developed and implemented a browser- based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

35.     The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/ (last accessed December 29, 2022).

36.     The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes.  *Id.*

37.     The National CRAs, provide notice of a consumer's dispute to data furnishers in the ACDV format, and forward the ACDV to the furnisher through e- OSCAR.

38.     If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

39.     The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See https://www.e-oscar.org/getting-started/about-us (last accessed December 29, 2022).

40.     Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

41.     Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and states that e-OSCAR is "in compliance with FCRA and Metro 2 standards." *See*, https://www.transunion.com/data-reporting/support-teams (last accessed December 29, 2022).

      **The FDCPA**

42.     The FDCPA provides, in relevant part: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation

of this section: (2) The false representation of -- (A) the character, amount, or legal status of any debt ... 15 U.S.C. § 1692e.

43.     A consumer has a right under the FDCPA to receive information from a debt collector that is not "false, deceptive, or misleading." *Pralle v. Cooling & Winter, LLC*, No. 2: 16-cv-865-FtM-99CM (M.D. Fla. May 2, 2017).

44.     The FDCPA defines the term "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3) (emphasis added).

45.     The FDCPA defines the term "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added).

46.     The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added).

47.     "The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (citing 15 U.S.C. § 1692k).

48.     For the purposes of the claims brought in this action, the applicable standard under the FDCPA in the Eleventh Circuit is "the least sophisticated" consumer test. *See Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting the test enunciated in *Exposition Press Inc. v. FTC*, 295 F.2d 869 (2d Cir. 1961)).

49.     The principles underlying the FDCPA must be implemented for "the public— that vast multitude which includes the ignorant, the unthinking and the credulous." *Jeter*, 760 F.2d at 1172-73 (internal citations omitted).   The "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." Id. at 1173 (internal citations omitted).

50.     There is only one affirmative defense to liability for a violation of the FDCPA, the "bona fide error" defense. 15 U.S.C. §1692k(c).

51.     To take advantage of this defense, the defendant must show by the preponderance of the evidence that its violation of the Act was not intentional, was a bona fide error, and occurred despite the maintenance of procedures reasonably adapted to avoid any such error. *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352-53 (11th Cir. 2009).

**The FCCPA**

52.     The FCCPA's goal is to "provide the consumer with the most protection possible." *See LeBlanc* at 1192 (citing Fla. Stat. § 559.552).

53.     The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

54.     "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." Fla. Stat. §559.77(2).

55.     As a consumer, Mrs. Riccardi has a private right of action against SNSC pursuant to Florida Statute §559.77(2), which provides that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages . . . not

exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." (omissions added).

## FACTUAL ALLEGATIONS

56.     Before the Note and Mortgage were assigned to US Bank, it was previously owned by Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-D ("Wilmington").

57.     The Note on the Home was amended to reflect payments of principal and interest totaling $1,152.22, which became effective on May 1, 2020, with the first payment becoming due on June 1, 2020 ("Second Amended Note").

58.     The property taxes and insurance are paid separately by Mrs. Riccardi who sends her taxes to Broward County directly and her homeowners insurance payments to TypTap.

59.     Mrs. Riccardi has never missed a payment on her Loan since the Second Amended Note became effective.

60.     Additionally, Mrs. Riccardi has established the habit of paying one month ahead of her due date.

61.     Based on information and belief, Mrs. Riccardi made Loan payments to Wilmington from June 1, 2020, through June 25, 2021 in the amount of $1,152.22.

62.     In July of 2021, Fay Servicing, LLC became the servicer of the Loan, so Mrs. Riccardi submitted Loan payments through May 19, 2022.

63.     Then, in June of 2022, SNSC became the servicer of the Loan, so Mrs. Riccardi began submitting monthly payments to SNSC.

64.     Despite being one month ahead on her Loan payments and paying her taxes and insurance directly, SNSC has continuously asserted that Mrs. Riccardi needs to bring her loan current.

65.     Mrs. Riccardi has communicated this error to SNSC multiple times through phone calls, by mail, and at times through her former bankruptcy attorney Robert J. Bigge, Jr. ("Attorney Bigge").

66.     To clarify SNSC's confusion, Attorney Bigge sent SNSC a letter with the Second Amended Note attached dated July 13, 2022. A copy of Attorney Bigge's letter is attached as Exhibit "A."

67.     Attorney Bigge's letter was necessary because SNSC continued to wrongfully insist Mrs. Riccardi was delinquent on her mortgage because she had failed to pay her taxes and insurance, which would be placed into escrow.

68.     On July 25, 2022, Mrs. Riccardi applied for a Capital One credit card and was denied, but she did not know why at the time, so she began reviewing her available credit reports from the CRAs.

69.     On August 25, 2022, Mrs. Riccardi sent SNSC proof of her recent payment to SNSC of $1,152.22, a copy of her recent Broward County Property Tax bill showing the amount due as $0, and her recent insurance payment to TypTap. A redacted copy of the August 25, 2022 proof of payments sent to SNSC is attached as Exhibit "B."

70.     In August of 2022, Mrs. Riccardi noticed her Trans Union credit report showed her only trade account from Fay Servicing, LLC was reporting her account as late from February '22 through June '22; the account is also listed as "Transferred."

71.     Under the "Scheduled Payment" section of Mrs. Riccardi's Trans Union credit report, Fay Servicing was reporting an amount due of $1,827, which lead to Mrs. Riccardi being reported as late since she was submitting $1,152. 22 each month.

72.     Mrs. Riccardi also noticed her Equifax credit report showed the Fay Servicing account being reported as late for February '22 and March '22.

73.     Mrs. Riccardi has been unable to get a copy of her Experian report.

74.     As a result, on or about September 15, 2022, Mrs. Riccardi submitted written disputes to Trans Union, Equifax, and Experian ("Credit Reporting Agencies" or "CRAs") as required by the FCRA, who then forwarded the dispute to Fay Servicing. ("Initial Disputes").

75.     A redacted copy of the Initial Disputes are attached hereto as part of Composite Exhibit "C."

76.     In her written disputes Mrs. Riccardi provided proof that her Mortgage payments were $1,152.22 per month, that she pays her taxes directly to Broward County, and that she sends her insurance payments to TypTap. *See* Exhibit "C."

77.     After her written disputes were sent to the CRAs and then forwarded to Fay Servicing, Mrs. Riccardi reviewed her credit reports and saw the disputed account with was still being reported as late for the same months as in her Initial Disputes.

78.     Based on information and belief, this same disputed account that has been viewed by one or more third parties in connection with applications for credit, account reviews, and other permissible purposes under the FCRA.

79.     Specifically, on October 20, 2022 Mrs. Riccardi applied for credit through Comenity Bank who issues store card accounts through Bealls; Mrs. Riccardi was denied credit.

80.     Based on information and belief, the disputed account was viewed by Comenity Bank and was a substantial factor in the decision to deny credit to Mrs. Riccardi.

81.     On or about November 1, 2022, Mrs. Riccardi applied for a Capital One Credit card again; she was approved for a $200 credit limit.

82.     Based on information and belief, the disputed account was viewed by Capital One who and was a substantial factor in the interest rate, credit limit, and other terms offered to Mrs. Riccardi as a result.

83.     On or about November 9, 2022, Mrs. Riccardi applied for a Credit One Bank credit card, but she was denied credit.

84.     Based on information and belief, the disputed account was viewed by Credit One Bank and was a substantial factor in the decision to deny credit to Mrs. Riccardi.

85.     With each denial of credit or granting of a reduced credit line at an increased interest rate, Mrs. Riccardi suffered damages in multiple forms including frustration, emotional and mental distress, lost opportunity to benefit from credit, and misrepresentation of an amount to potential creditors.

86.     On or about December 6, 2022, an SNSC Representative emailed Mrs. Riccardi and stated in relevant part: "I wanted to go over the escrow with you as you are not escrowed anymore per the Modification you had on your loan. You have some extra funds that I would like to discuss the placement with you to assist you in bringing your account current."

87.     While SNSC finally acknowledged the fact that Mrs. Riccardi's Loan was not escrowed, SNSC was still wrongfully asserting that her Loan is delinquent.

88.     Based on information and belief, SNSC has not been applying Mrs. Riccardi's monthly $1,152. 22 monthly payments to principal and interest, but has rather placed them in a suspense account because SNSC wrongfully asserted her account was escrowed.

89.     To make matters worse, SNSC has recently submitted the funds in suspense to Broward County to make Mrs. Riccardi's tax payments for the upcoming quarter.

90.     On December 8, 2022, SNSC claimed Mrs. Riccardi was delinquent on her mortgage based on Fay Servicing, LLC's previous statements which wrongfully asserted her payments were $1,827 inclusive of escrow.

91.     A redacted copy of the December 8, 2022, email and is attached as Exhibit "D."

92.     A redacted copy of the monthly statement attached to December 8, 2022, email is attached as Exhibit "E."

93.     Most recently, SNSC sent a monthly statement to Mrs. Riccardi for her January 2023 payment, which claimed a total amount due of $10,605.60. A redacted copy of the most recent statement is attached as Exhibit "F."

## COUNT I – VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST FAY SERVICING

94.     Plaintiff incorporates by reference paragraphs 1, 3, 4, 7, 9 -13, 24 -41, 56 - 62, 68, and 70 - 85 as if fully stated herein.

95.     Fay Servicing is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

96.     Fay Servicing violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's Initial Dispute when it failed to review all relevant information provided by the CRAs.

97.     Additionally, Fay Servicing violated §1681s-2(b) by failing to accurately respond or completely failing to respond to Plaintiff's Initial Dispute sent to the CRAs.

98.     As a result of Fay Servicing's violations of the FCRA, Plaintiff has been damaged.

99.     Plaintiff's damages include damages include emotional distress associated with the Fay Servicing account not being corrected, credit denials, credit being granted at increased rates as the result of the account being viewed by credit grantors, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

100.    Fay Servicing negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

101.    Additionally, Fay Servicing committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

102.    Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Fay Servicing in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

recover under 15 U.S.C. §1681o.

## COUNT II - VIOLATIONS OF 15 U.S.C. §1692e(8)
## AGAINST FAY SERVICING

103.    Plaintiff incorporates by reference paragraphs 1, 3, 4, 6, 9 – 16, 42 – 51, 56 – 62, 68, and 70 - 85 as if fully stated herein.

104.     A "debt collector" violates 15 U.S.C. §1692e(8)  by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

105.     SNSC violated §1692e(8) when it communicated false credit information to the CRAs by stating:

    a.   the monthly payments were $1,827

    b.   Plaintiff was delinquent on her mortgage for several months; and

    c.   There is no notation of a dispute on her credit files.

106.     Each month that Fay Servicing communicated false credit information regarding Plaintiff constitutes a violation of §1692e(8).

107.     Additionally, Fay Servicing has violated §1692e(8) each time the false credit information was viewed by a third party in connection with an account review, offer of credit, or application of credit.

108.     The FDCPA is a strict liability statute and accordingly Defendant's conduct need not have been intentional, Defendant's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

109.     Fay Servicing's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id.* at 1194 (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

110.     Fay Servicing, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(8).

111.    15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

112.    As a result of Fay Servicing's violations, Plaintiff has suffered damages including but not limited to, credit denials time spent addressing Defendant's illegal collection practices, misrepresentation of an amount to a third party, damage to her reputation for credit worthiness, an inaccurate credit report, a higher interest rate on credit she has been approved for, and emotional distress because of Fay Servicing's actions or inactions.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against Fay Servicing for:

a.    Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

b.    Attorneys' fees, litigation expenses and costs of the instant suit; and

c.    Such other or further relief as the Court deems proper.

**COUNT III - VIOLATIONS OF FLA. STAT. §559.72(5)**
**AGAINST FAY SERVICING FOR DISCLOSURES TO SNSC**

113.    Plaintiff incorporates by reference paragraphs 1, 3 – 5, 8 – 15, 52 – 55, 68, and 70 - 85 as if fully stated herein.

114.    At all relevant times to this action, Fay Servicing is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

115.    Fay Servicing violated Florida Statute § 559.72(5) **by disclosing to a person other than the Plaintiff or his family information affecting Plaintiff's reputation,** whether or not for credit worthiness, **with knowledge or reason to know** that the other person does not have a legitimate business need for the information or **that the information is false.** (emphasis added).

116. Specifically, Fay Servicing disclosed false information affecting Plaintiff's reputation to SNSC: that Plaintiff was delinquent on her mortgage despite having never missed a payment since her Loan was modified in May 2020.

117. If Fay Servicing would have disclosed accurate information to SNSC regarding Plaintiff's mortgage payments, payment history, and account status she would not have been subjected to SNSC's claims that she is delinquent.

118. "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2) (emphasis added).

119. As a result of Fay Servicing's violations, Plaintiff suffered damages, including but not limited to, time spent addressing Defendant's illegal collection practices, damage to her reputation for credit worthiness, misrepresentation of an amount to a third party, and the emotional and mental distress associated with Fay Servicing's actions or inactions.

120. Damages in the form of reputation being affected are the "class of injury where damages are difficult to prove and at the same time provide a penalty to dissuade parties . . . from engaging in collection practices which may have been heretofore tolerated industry wide." *See Laughlin v. Household Bank*, 969 So. 2d 509, 513 (Fla. 1st DCA. 2007) (quoting *Harris v. Beneficial Finance Company of Jacksonville*, 338 So.2d 196, 200 (Fla. 1976)). Accordingly, Plaintiff "is not required to prove actual damages, but only a violation of one of the prohibited

practices in the FCCPA." Id.  "As discussed above, by enacting section 559.77, the Legislature intended to provide statutory damages in an area where the amount of damages are difficult to calculate." *Id.* at 514.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against for: actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other or further relief as the Court deems proper.

## COUNT IV – VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST FAY SERVICING

121.    Plaintiff incorporates by reference paragraphs 1, 3 – 5, 8 -15, 52 – 55, 68, and 70 – 85 as if fully stated herein

122.    At all relevant times to this action, Fay Servicing is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

123.    Fay Servicing violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knew that the debt was not legitimate, or asserting the existence of some other legal right when Defendant knew that right did not exist.

124.    Specifically, Fay Servicing's monthly statements sent to Mrs. Riccardi wrongfully claimed she was delinquent, that her mortgage had escrow, and that her monthly payment amount was $1,827 instead of the modified $1,152 that Fay Servicing had knowledge of.

125.    "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the non-

compliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2) (emphasis added).

126.    As a result of Defendant's violations, Plaintiff suffered damages, including but not limited to, time spent addressing Defendant' illegal collection practices and related emotional distress.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against Fay Servicing for: actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other or further relief as the Court deems proper.

## <u>COUNT V – VIOLATIONS OF 15 U.S.C. §1692e(2)(A)</u><br><u>AGAINST SNSC</u>

127.    Plaintiff incorporates by reference paragraphs 2, 3 – 6, 9, 10, 17 – 23, 42 – 51, 56 – 61, 63 – 69, and 86 – 93 as if fully stated herein.

128.    Plaintiff is not delinquent on her mortgage and there is no escrow on her Loan. Nonetheless, SNSC has continuously and wrongfully insisted the opposite.

129.    Therefore, SNSC violated §1692e(2)(A) of the FDCPA by misrepresenting the character, legal status, and amount of the debt in all communications to Plaintiff.

130.    Defendant's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id.*; *See also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

131. The FDCPA is a strict liability statute and accordingly Defendant's conduct need not have been intentional, Defendant's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

132. Defendant, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(2)(A).

133. 15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the Court.

134. As a result of Defendant's violations, Plaintiff suffered damages, including but not limited to, time spent addressing Defendant's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in his favor and against Defendant for:

a. Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

b. Attorneys' fees, litigation expenses and costs of the instant suit; and

c. Such other or further relief as the Court deems proper.

### COUNT VI – VIOLATION OF 15 U.S.C. §1692e(10) AGAINST SNSC

135. Plaintiff incorporates by reference the allegations in paragraphs 2, 3 – 6, 9, 10, 17 - 23, 42 – 51, 56 - 61, 63 – 69, and 86 – 93 as is fully set forth herein.

136. A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. *Johnson v. Midland Funding, LLC*, 823 F.3d 1334 (11th Cir. 2016).

137. SNSC has sought to collect money from Plaintiff that is not owed because she has

never missed a payment on her mortgage since it was modified in May of 2020.

138.    SNSC has sent monthly statements to Plaintiff while servicing her loan that falsely

represent the status of her Loan as delinquent and that she is past due for multiple months.

139.    SNSC through its agents, representatives, and/or employees acting within the scope

of their authority, violated 15 U.S.C. §1692e(10).

140.    15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any

provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in

statutory damages, actual damages, the costs of the action, together with a reasonable attorney's

fee as determined by the court.

141.    As a result of SNSC's violations, Plaintiff has suffered damages including but not

limited to, time spent addressing Defendant's illegal collection practices and emotional distress

associated with SNSC's repeated insistence that she is delinquent on her mortgage.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and
against SNSC for:

a.    Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

b.    Attorneys' fees, litigation expenses and costs of the instant suit; and

c.    Such other or further relief as the Court deems proper.

## COUNT VII – VIOLATIONS OF FLA. STAT. §559.72(9)
## AGAINST SNSC

142.    Plaintiff incorporates by reference the allegations in paragraphs 2, 3 – 6, 8 – 10, 17

– 22, 52 – 61, 63 – 69, and 86 - 93 as if fully set forth herein.

143.    At all relevant times to this action, Fay Servicing is subject to and must abide by

the laws of Florida, including Fla. Stat. §559.72.

144.    SNSC violated Florida Statute § 559.72(9) by claiming, attempting, or

threatening to enforce a debt when Defendant knew that the debt was not legitimate or asserting the existence of some other legal right when Defendant knew that right did not exist.

145.     Specifically, SNSC's monthly statements sent to Mrs. Riccardi wrongfully claimed she was delinquent, that her mortgage had escrow, and that her monthly payment amount was $1,827 instead of the modified $1,152, which SNSC had direct knowledge of.

146.     "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2) (emphasis added).

147.     As a result of Defendant's violations, Plaintiff suffered damages, including but not limited to, time spent addressing Defendant' illegal collection practices and related emotional distress.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against SNSC for: actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other or further relief as the Court deems proper.

## JURY DEMAND

148.     Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**SHARMIN & SHARMIN, P.A.**
***/s/ Kevin Rajabalee, Esq.***
Fla. Bar. No. 119948
kevin@sharminlaw.com
Eiman Sharmin, Esq.

FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Direct: 561-296-9109
Fax: (844) 921-1022
eiman@sharminlaw.com
*Attorneys for Plaintiff*